UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

MICHAEL JOSEPH PALMIERI,          Case No. 11-51224-wsd
                                                          Chapter 13
        Debtor.                                Hon. Walter Shapero
_____/

OPINION REGARDING VIOLATION OF STAY

Before the Court is Debtor Michael Palmieri's Motion For Sanctions For Violation of the Automatic Stay (Docket No. 19) and Julie Casler's, the Debtor's former spouse, Response to the Motion (Docket No. 28). The Court conducted an evidentiary hearing and afterwards took the matter under advisement.

I. Procedural and Factual Background

The Debtor filed a voluntary Chapter 13 petition on April 19, 2011. The Debtor's Schedule E did not disclose any domestic support obligation. The Debtor instead scheduled a nonpriority unsecured claim in an unknown amount, in favor of Ms. Casler on Schedule F (Docket No. 11). The Debtor's proposed plan of reorganization (Docket No. 13) did not specify any treatment for domestic support obligations. The Debtor's plan also proposed to surrender his interest in the marital home. The Court entered an Order Confirming the Debtor's plan on July 28, 2011 (Docket No. 39).

Pre-petition, the Debtor and Ms. Casler's entered into a Judgment of Divorce on November 19, 2010, in Wayne County Circuit Court (Debtor's Exhibit B). The Judgment of Divorce, in the section labeled "SPOUSAL SUPPORT," granted neither party spousal support but ordered that "spousal support shall be preserved until further Order of the Court, until one on the respective

1

parties' [sic] remarries or dies, whichever shall occur first." (Exh. B., p. 2). In the section labeled "PROPERTY SETTLEMENT," the state court ordered the marital home be held by the Debtor and Ms. Casler as tenants by the entirety and directed them to immediately market the home, unless the parties agreed to a different disposition (id., p. 2-3).

The Judgment of Divorce also set forth certain obligations related to the joint debts encumbering the marital home. Overall, the parties were to be responsible for one-half of the first and second mortgage until a sale of the home or the mortgages were paid in full. Ms. Casler was to bring the first mortgage current, continue to make payments on the first mortgage, and provide proof of such payment to the Debtor. The Debtor had the identical obligations with respect to the second mortgage. Any late fees accruing after a stated date would be the responsibility of the party failing to contribute as ordered. In addition, the parties were to reconcile the ordered payments on the fifteenth of each month "to insure that each have contributed one (1/2) half for the marital expenses" detailed in the Judgment of Divorce (Exh. B, p. 3).

Prior to the Debtor filing his petition, Ms. Casler filed a motion in the state court seeking a show cause order to hold the Debtor in contempt for failure to pay as directed in the Judgment of Divorce (Docket No. 19, pp. 16-19). The state court entered, pre-petition, a show causing hearing order setting a post-petition hearing date on that motion. The Debtor then contacted Ms. Calser's state court attorney notifying her of his petition and the show cause hearing was eventually dismissed by the state court. Ms. Calser thereafter filed in the state court a Motion for Spousal Support and Attorney Fees (Debor's Exh. E) (the "Support Motion"). In that motion, Ms. Casler sought "an award of spousal support" from the Debtor due to his alleged failure to pay the ordered obligations which allegedly resulted in Ms. Casler's "dire financial distress," including her inability

2

to maintain living expenses and debt payments (Exh. E, ¶¶ 3, 5, 9, 17). Ms. Casler further alleged that the marital home was in foreclosure due to the Debtor's failure to make the payments on the second mortgage (id., ¶¶ 18, 21). Ms. Calser sought an order directing the Debtor "to pay temporary support" in the amount of $5,000 "until this matter can be set for a hearing" (id. ¶ 23 and "Wherefore" clause). She also requested attorney fees pursuant to Michigan state law and court rules as well as

Upon the filing of the Support Motion, the Debtor filed the instant motion alleging Ms. Casler violated 11 U.S.C. § 362(a)(1) and (3) and arguing that 11 U.S.C. § 362(b)(2)(A)(ii) did not except the filing from the automatic stay.

## II.  Evidentiary Hearing Testimony

The Debtor testified that he believed that Ms. Casler was trying to collect the money directed to be paid to her in the parties' Judgment of Divorce; that he, not Ms. Calser, initially sought spousal support in the state court but was denied and that he insisted on the support provision; that on account of Ms. Casler's Support Motion, he took time off work and was forced to retain a family law attorney to prevent the entry of default in state court; and that the attorney fees made it difficult for him to meet his Chapter 13 post-petition payments. On cross-examination, the Debtor admitted that he failed to pay any of the amounts ordered in the Judgment of Divorce.

Ms. Casler testified that she filed the Support Motion due to the Debtor's non-payment of the second mortgage and the arrears on that mortgage; that this non-payment affected other aspects of her life, such as increasing her living expenses; and that she was attempting to short sale the marital home but simply could not bear all the costs associated with keeping the home without the Debtor's payment of his obligations.

3

11-51224-wsd    Doc 50    Filed 11/21/11    Entered 11/21/11 16:09:36    Page 3 of 14

The final witness was Ms. Casler's state court attorney, Ms. Leslie Logan. Ms. Logan testified on direct examination that she filed the Support Motion on Ms. Casler's behalf on account of the Debtor's failure to make the ordered payments on the second mortgage causing Ms. Casler to sink deeper into financial difficulty. In Ms. Logan's opinion, the Debtor's obligations in the Judgment of Divorce were in the nature of support because the payments were to help Ms. Casler meet other monthly expenses. The Support Motion, according to Ms. Logan, seeks different relief than the Contempt Motion because it expressly seeks spousal support for Ms. Casler's desperate financial straits. Ms. Logan also testified that she believed Michigan law allowed Ms. Casler to seek attorney fees for the enforcement of a divorce judgment. Ms. Logan testified that although Support Motion sought temporary support, the dire financial situation required immediate assistance until a full hearing on long term spousal support could be scheduled. Ms. Logan further testified that spousal support was not sought at the time of divorce because the Judgment of Divorce obligated the Debtor to make the payments and there was no hardship at the time. On cross-examination, Ms. Logan acknowledged receiving a copy of the Debtor's proposed plan setting forth his proposed treatment his obligations under the Judgment of Divorce.

### III. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

### IV. Discussion

The Debtor's motion seeks sanctions pursuant to 11. U.S.C. § 362(k) for the alleged violation of the automatic stay, including $50,000 in punitive damages. He argues that the filing of a

4

bankruptcy petition under Chapter 13 acts as an automatic stay that prohibits all entities from taking certain actions against a debtor and the debtor's property pursuant to 11 U.S.C. § 362, under which creditors are prohibited from "any act to collect, assess, or recover a claim against the debtor that arose before commencement of the case."

Section 362(b), however, provides numerous statutory exceptions to the stay. Specifically, § 362(b)(2)(A)(ii) excepts from the automatic stay "the commencement or continuation of a civil action or proceeding for the establishment or modification of an order for domestic support obligations[.]"

The Debtor argues the Support Motion mirrors the relief sought in Ms. Casler's Contempt Motion and therefore is not in the nature of support so as to come within the purview of § 362(b)(2)(A)(ii). Ms. Casler conversely argues § 362(b)(2)(A)(ii) excepts her Support Motion because the relief sought is the establishment of a temporary support order pending a full hearing on a long-term domestic support order is held. Thus, the question before the Court is whether Creditor's Support Motion seeks the establishment of an order for a "domestic support obligation."

The starting point for that determination is the definition of "domestic support obligation" in § 101(14A). Section 101(14A) states, in relevant part:

> The term 'domestic support obligation' means a debt that accrues before, on, or after the date of the order for relief in a case under this title . . . that is—
>
> (A) Owed to or recoverable by—
>
> (i) a . . . former spouse . . . of the debtor . . .
>
> (B) in the nature of . . . support . . . of such spouse . . . of the debtor . . . , without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
> (i) a separation agreement, divorce decree, or property settlement

5

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity[.]

The Debtor raises no argument regarding subsections (A), (C), or (D). It is clear that here there is a "debt," *see* 11 U.S.C. § 101(12) and § 101(5), owed to a debtor's former spouse and that "debt" either was "established or is subject to establishment" by order of a court of record before or after the petition date. And there is no contention of an assignment to any non-government entity. Therefore, the key is § 101(14A)(B), whether the relief sought in the Support Motion is "in the nature . . . of support" to Ms. Casler.

In making this determination, however, it is important to emphasize the procedural posture of the matter before the Court – a motion alleging a violation of the stay. The Debtor's motion does not seek a determination that his obligations under the Judgment of Divorce are dischargeable pursuant to § 523(a)(5) because they are not in the nature of support. Nor does the Court offer any. *See In re Dudding*, No. 10-10557, 2011 WL 1167206, at * 5 (Bankr. D. Vt. March 29, 2011) (on debtor's former spouse's motion for relief from stay, the court notes it "is not making a dischargeability determination under § 523(a)(5)"). The Court is deciding only whether the claimed exception to the automatic stay applies, and this requires determining whether the relief sought by Ms. Casler meets the Code's definition of a "domestic support obligation." When a court "determin[es] what constitutes debt 'in the nature of alimony, maintenance, or support' under § 101(14A), the case law construing pre-BAPCPA § 523(a)(5), which utilized the same language, is relevant." *In re Boller*, 393 B.R. 569, 574 (Bankr. E.D. Tenn. 2008) (citations omitted). *See also In re Krueger*, __ B.R. __, 2011 WL 4368190, at 5 (Bankr. D.S.C. Sept. 19, 2011) (citations

6

omitted) ("In determining whether an obligation constitutes a [domestic support obligation], the Court looks to the interpretation of [domestic support obligations] in case law involving the dischargeability of debts under § 523(a)(5), as enacted prior to the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA).").

"The determination of whether a debt is in the nature of . . . support is a matter of federal bankruptcy law rather than state law." *Cantwell v. Bearden (In re Bearden)*, 330 B.R. 214, 223 (Bankr. N.D. Ill. 2005) (citing *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444, 447 (11th Cir. 1996); *accord In re Boller*, 393 B.R. at 574 (citing *In re Strickland*; other citations omitted). In order for a joint marital obligation assumed by a debtor-spouse to be non-dischargeable it "must be actually in the nature of alimony or support, and the determinative issue is generally whether or not the parties intended the assumption of the debts to be in lieu of . . . support payments or a means of dividing the marital property." *In re Boller*, 393 B.R. at 574-75 (citing *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983); other citations omitted). In addition, courts look to whether the debtor's assumption of the obligation at issue "will provide *necessary* support to the former spouse[,]" that is, "support needed by the former spouse or children to meet daily needs." *In re Westerfield*, 403 B.R. 545, 554 (Bankr. E.D. Tenn. 2009) (emphasis in original). "Bankruptcy courts considering this issue look beyond the labels used by the parties to decide whether they intended the obligation to function as support . . . at the time of the creation of the obligation." *In re Boller*, 393 B.R. at 574 (citations omitted). In short, "if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck. In determining whether an award is actually support, the bankruptcy court should first consider whether it 'quacks' like support." *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir. 1998).

For the following reasons the Court concludes that the relief sought by Ms. Casler in her Support Motion "'quacks' like support." First, while the section setting forth the parties' obligations relative to the mortgages was labeled as "Property Settlement," that label does not control. *In re Boller*, 393 B.R. at 574. Second, the Judgment of Divorce expressly reserved the option of spousal support up until the time that either of the parties remarried or died. (Exh. B., p. 2). That an obligation ends at remarriage or death is indicative of an award made in the nature of support. *In re Sorah*, 163 F.3d at 401; *accord Lewis v. Lewis (In re Lewis)*, 423 B.R. 742, 749 (Bankr. W.D. Mich. 2010) (citing *In re Sorah*) (one "'indicia' of support" is that the payment terminates at death or remarriage). Further supporting this "indicia" is the fact that the Debtor's obligation also terminated once the need for the support ended, i.e, the the home was sold or the second mortgage was paid off. *See Pike v. Currin (In re Currin)*, No. 02-1169, 2007 WL 1138438 (Bankr. E.D. Tenn. Apr. 13, 2007) (citing *In re Sorah*) (obligation to pay mortgage is an "indicia" of domestic support because "it terminated when the former spouse would no longer need support"). Moreover, on its face the Support Motion seeks "an award of spousal support" "both on a temporary and long term" basis due to Ms. Casler's deteriorated financial condition resulting from the Debtor's failure to pay the second mortgage and other amounts as ordered. (Exh. E, ¶¶ 3, 17, 22, and 24). That Ms. Casler's financial circumstances deteriorated following the Debtor's admitted failure to make the mortgage payments as ordered demonstrates that the payments provided a necessary support to Ms. Casler to meet her daily needs.

Third, contrary to the Debtor's argument at the hearing, the fact that the mortgage payments at issue are not paid directly to Ms. Casler does not mean they cannot be deemed to be in the nature of "support." Courts have generally held that the "[p]ayment of the support, maintenance, or

8

alimony need not be paid directly to the spouse or ex-spouse." *In re Johnson*, 397 B.R. 289, 296 (Bankr. M.D.N.C. 2008) (citing *In re Calhoun*, 715 F.2d at 1107); *see also Lewis v. Trump (In re Trump)*, 309 B.R. 585 (Bankr. D. Kan. 2004) (citation omitted) ("The fact that under the Agreement [the debtor] was to make payments to the second mortgagee, who was a third party, does not prohibit this Court from finding his obligation nondischargeable."). Thus, the fact that the Debtor was ordered to pay the second mortgage directly rather than to Ms. Casler does not preclude a finding that the intent of the parties was that the payment would provide necessary support to Ms. Casler.

Lastly, and most importantly, the majority of courts considering whether a mortgage debt assumed by or ordered to be paid by a debtor pursuant to a judgment of divorce have held that such an obligation is in the nature of "support." *See, e.g.*, *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 764 (3d Cir. 1990) (" The great weight of authority holds that a spouse's assumption of mortgage debts which enable members of the family to remain in the marital residence is an obligation in the nature of support, maintenance or alimony.") (collecting cases); *In re Johnson*, 397 B.R. at 297-98 ("Numerous courts have held that an obligation that is essential to enable a party to maintain basic necessities or to protect a residence constitutes a nondischargeable support obligation." (collecting cases)). And although the divorce judgments before some courts included a hold harmless clause, the absence of such a clause here is not dispositive. *In re Trump*, 309 B.R. at 593-94 ("Even absent [hold harmless or indemnification] language, the Agreement created a legally enforceable obligation for [the debtor] to make payments on the second mortgage note.").

An example of a mortgage debt ordered to be paid by the debtor in connection with a divorce judgment being in the nature of support is found in *Leslie v. Leslie (In re Leslie)*, 181 B.R. 317 (Bankr. N.D. Ohio 1995). In that case, the Chapter 7 debtor's former spouse sought a determination

9

that the debtor's ordered payment of the couple's credit line, secured by a second mortgage, was in the nature of support pursuant to § 523(a)(5) (pre-BAPCPA). *In re Leslie*, 181 B.R. at 318-19 . The *Leslie* court agreed, finding that debtor's periodic payments towards the credit line "was necessary so that [the former spouse] could remain in the Home," his payments "had the actual effect of providing [the former spouse] with necessary support," the ex-spouse could not have met "her monthly living expenses" after the divorce absent additional support from the debtor, and it was not unreasonable to characterize the payment as support under traditional considerations. *Id*. at 320.

Other courts similarly hold that the debtor's periodic payment is in the nature of support where it assists the non-debtor former spouse in maintaining a place to live and other basic necessities. *See*, *e.g*, *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 609 (B.A.P. 8th Cir. 1997) (in Chapter 7 non-dischargeability action, court affirms lower courts' finding that debtor's obligation to make mortgage payments is in nature of support because such were "intended to serve the most basic of support functions, to provide a home for the children and [former spouse] which they otherwise would not have been able to afford"); *In re Trump*, 309 B.R. at 595 (in Chapter 7 non-dischargeability action where divorce agreement provided that debtor-husband would pay second mortgage but failed to pay due to drop in earnings, court nonetheless finds that payments are in nature of support "because the function of his obligation was to allow his wife and children to remain in the marital residence as their shelter"); *In re Hill*, 133 B.R. 126, 138 (Bankr. N.D. Ind. 1989) (court finds it clear "that the intention of the parties was that the ex-wife was to be provided with one of the very basic necessities of life, i.e. shelter, and that the awarding of the marital home to her and the Agreement by the Debtor to pay the existing mortgage thereon was the method chosen to accomplish this goal" and therefore "the Court finds that the Agreement to insure that the ex-wife

10

be provided with this necessity of life, i.e. shelter, is in the nature of spousal maintenance"). The Support Motion and Ms. Casler's testimony support the conclusion that without the Debtor's support in the form of payment on the second mortgage Ms. Casler cannot maintain the home as a shelter for herself and her minor child, and, at the time of the filing of the motion, faced foreclosure due to the Debtor's admitted failure to pay the second mortgage. Nor can she meet her daily necessary living expenses. Under these circumstances, the Court concludes that the Debtor's obligations are in the nature of support as defined in § 101(14A). *See In re Bristow*, 2005 WL 1321996, at *6 (debtor's failure to pay caused plaintiff-wife to be "unable to maintain payments and [the creditor] commenced foreclosure proceedings" and the failure to pay caused plaintiff-wife to be "unable to meet her basic household needs").

The Court rejects the Debtor's argument that the Support Motion does not seek relief in the nature of support because Ms. Casler seeks an award of attorneys fees pursuant to Michigan law to continue to prosecute the motion. While the state court has yet to grant or deny that request, the Court notes that "[t]he award of attorney fees in a divorce judgment is usually found to be in the nature of support and thus nondischargeable." *Goans v. Goans (In re Goans)*, 271 B.R. 528, 532 (Bankr. E.D. Mich. 2001) (citations omitted). "In Michigan, attorney fees in a divorce action are awarded only as necessary to enable a party to prosecute or defend a suit." *Id*. (citing Michigan Court Rule 3.206). *See also In re Busch*, 369 B.R. 614, 625-26 (B.A.P. 10th Cir. 2007) (attorney fees incurred by ex-wife to enforce payment of second mortgage obligation assigned to debtor in divorce decree held non-dischargeable in part where state law allowed attorney fees to party that prevailed in enforcing a divorce decree obligation); *Ker v. Ker (In re Ker)*, 365 B.R. 807, 813 (Bankr. S.D. Ohio 2007) (citing *In re Goans*) (attorney fees incurred by ex-wife to obtain contempt

11

order related to domestic and child support orders "ha[d] the actual effect of providing necessary support" because the debtor's use of retirement funds to pay other creditors while letting marital home go into foreclosure demonstrated the debtor used funds that should have gone towards his ordered obligations, and ex-wife's contempt motion was only way she could obtain a ruling that the obligations were "in the nature of support"). Thus, to the extent Ms. Casler's seeks attorney fees permitted under Michigan law, those efforts are also excepted from the automatic stay pursuant to § 362(b)(2)(A)(ii).

The Court also rejects the Debtor's argument that Ms. Casler could simply file her own petition and thereby address her dire financial circumstances. That Ms. Casler could avail herself of the protections afforded by the Code certainly does not excuse the Debtor's admitted non-payment of any of his obligations under the Judgment of Divorce. *Cf. Heflin v. Helflin (In re Heflin)*, 145 B.R. 560, 563 (Bankr. S.D. Ohio 1992) (facing a similar argument from a Chapter 13 debtor related to child support payments, the court states, in dicta, that "chapter 13 does not relieve chapter 13 debtors of their legal and moral obligations to provide support to their children"); *In re Currin*, 2007 WL 1138438, at *5 (finding obligation to pay ex-spouse $370 per month towards formerly joint mortgage was in the nature of support and rejecting argument by debtor that non-debtor spouse could have filed her own petition "and avoided some of her obligations"). The Court agrees with the *In re Heflin* court that when a debtor is faced with complying with support obligations (whether those obligations be child or spousal support) and funding a Chapter 13 plan, "the debtor must simply forego the opportunity to retain assets by participating in a chapter 13 [case]." *In re Heflin*, 145 B.R. at 563. Thus, whether or not Ms. Casler could file her own petition is irrelevant to the issue of whether the Debtor's obligations under the Judgment of Divorce are

12

domestic support obligations.

As a final note, the Court reiterates that this Opinion does not make a dischargeability determination on any award that the state court may grant Ms. Casler. The Court only concludes here that the Support Motion seeks a "domestic support obligation" as defined in § 101(14A) and therefore is excepted from the automatic stay pursuant to § 362(b)(2)(A)(ii). If the state court does award Ms. Casler the relief she requests, at that point either party is not precluded from seeking a non-dischargeability determination, from an appropriate Court, and the Debtor may need to modify his plan accordingly, 11 U.S.C. § 1322(a)(2) and § 507(a)(1)(A). Ms. Casler could also seek to collect that award from non-estate property. The Court acknowledges that courts ascribe to different theories as to what property comprises a Chapter 13 debtor's estate following confirmation where the confirmed plan vests all property with the debtor at confirmation. *See, e.g.*, *In re Wei-Fung Chang*, 438 B.R. 77, 80-84 (Bankr. M.D. Pa. 2010) (discussing four approaches courts have taken); *In re Rodriguez*, 421 B.R. 356, 373 (Bankr. S.D. Tex. 2009) (same). There is no Sixth Circuit binding case law on this issue, and, in light of the uncertainty of whether the state court will in fact grant Ms. Casler the relief she seeks, the Court need not at this time determine which approach it will follow. Suffice to say, Ms. Casler, assuming a favorable decision in state court, must be cognizant that any attempt to collect on the award must be directed towards property this is not in the Debtor's estate, since such efforts are likewise excepted from the automatic stay pursuant to § 362(b)(2)(B).

V.  Conclusion

The Court holds that the Debtor failed to meet his burden to demonstrate that the Support Motion does not seek the establishment or modification of a "domestic support obligation," and thus,

13

it not violate the automatic stay, 11 U.S.C. § 362(b)(2)(A)(ii), and the Debtor's Motion is **DENIED**. Ms. Casler may proceed on her Support Motion in state court. Counsel for Ms. Julie Casler shall present an appropriate order.

**Signed on November 21, 2011**

                                                           **/s/ Walter Shapero**
                                                     **Walter Shapero**
                                                     **United States Bankruptcy Judge**

14

11-51224-wsd    Doc 50    Filed 11/21/11    Entered 11/21/11 16:09:36    Page 14 of 14